# CONTINENTAL NAT. BANK OF SALT LAKE CITY v. MINERSVILLE RESERVOIR & IRRIGATION CO.

No. 4609.   Decided December 13, 1928.   (273 P. 502.)
Rehearing Denied January 7, 1929.

*E. A. Walton,* of Salt Lake City, for appellant.

*Wilson & Barnes,* of Salt Lake City, for respondent.

THURMAN, C. J.

This is an action to compel the defendant to issue to plaintiff a certificate of stock in the defendant company, or for damages in the event the stock cannot be issued, and for general relief.

The complaint alleges that plaintiff at all times mentioned was the owner of 1,200 acres of land in Beaver county, adjacent to the town of Minersville, and 140⅝ shares of the capital stock of defendant company, represented by certificate No. 43; that on or about July 14, 1914, one A. B. Lewis transferred certificate No. 43 to the plaintiff for a valuable consideration; that on or about September 14, 1916, plaintiff presented and delivered said certificate to William Joseph, the secretary of the defendant company, at the office of said defendant at Minersville, Beaver county, Utah, and then and there demanded that he, as said secretary, transfer, reissue, and deliver to T. W. Boyer, as trustee for plaintiff, a new certificate in exchange for said certificate owned and tendered by the plaintiff, which demand was refused, and defendant, through its officers, still refuses to reissue and deliver said new certificate to plaintiff in accordance with said demand, but, on the contrary, fraudulently, unlawfully, and deceitfully retains possession of said certificate No. 43 so delivered to defendant's secretary, as aforesaid.

It is then alleged in the complaint that, prior to the time said Lewis transferred said certificate No. 43 to plaintiff, and before plaintiff became the owner thereof, on or about July 13, 1914, the defendant, through its said secretary, William Joseph, stated to the plaintiff that the said A. B. Lewis was the owner and entitled to the possession of said certificate No. 43 for said 140⅝ shares of the capital stock of the defendant corporation, and that, in reliance upon said certificate and the declaration of said defendant in reference thereto, this plaintiff for a valuable consideration became

the owner of said certificate and shares of capital stock of defendant corporation and entitled to have the same reissued to the plaintiff.

It is further alleged in the complaint that plaintiff acquired said 1,200 acres of land from said Lewis for a valuable consideration, and that plaintiff would not have acquired the same, except that it relied upon the said shares of capital stock to enable plaintiff to irrigate said land, or a portion thereof; that the value of said land depended largely upon the ownership of water for the purpose of irrigating said land; that without water to irrigate said land the value thereof is approxiamtely $10 per acre, but with the water right represented by said certificate No. 43 said land is of the value of approximately $20 per acre; that plaintiff has no plain, speedy, or adequate remedy at law.

Plaintiff prays for a decree directing the defendant to transfer said stock and reissue to plaintiff a new certificate evidencing that plaintiff is the owner of $140\frac{5}{8}$ shares of the capital stock of the defendant corporation, and if for any reason said defendant is unable to issue said stock, then that plaintiff have judgment against defendant for damages in the sum of $12,000 and general relief.

Defendant, answering, denied that plaintiff was the owner of the stock in question, or that it was transferred by Lewis to plaintiff for a valuable consideration, and denied that defendant fraudulently, unlawfully, or deceitfully retained possession of said certificate, but admitted that defendant refused and still refuses to reissue said stock to plaintiff.

For a further defense, defendant alleged that defendant is a mutual irrigation company organized for the purpose of constructing, maintaining, and operating a reservoir and other incidents thereto for the storage and safe control of certain waters of the Beaver river, and the conveyance thereof by canals and ditches to the agricultural lands of defendant's stockholders located at and adjacent to Minersville in Beaver county, Utah, for the irrigation of said lands;

that during all of the times mentioned the waters stored in said reservoir have been controlled and distributed by said defendant for the use of its said stockholders, who are the owners thereof; that the rights of said stockholders are represented by certificates of stock in the defendant corporation; and that defendant company was organized for no other purpose than to store, control, and distribute said waters to its said stockholders.

It is then alleged in the answer that prior to July 6, 1914, and prior to the time that said A. B. Lewis obtained possession of said certificate No. 43, the plaintiff loaned to the said Lewis a sum of money, the amount of which is unknown to defendant; that at the time said loan was made, and as security therefor, the said Lewis and the Lewisiana Land Company conveyed to the said T. W. Boyer, of Salt Lake City, as trustee for plaintiff, the said 1,200 acres of land mentioned in the complaint, together with that certain water, and the right to the use thereof, which was decreed to said Lewis in that certain decree known as the Greenwood decree made and entered February 8, 1913, in an action then pending in the district court of Beaver county, entitled *Minersville Reservoir & Irrigation Company et al.* v. *Beaver City et al., Defendants;* that said water right so decreed to Lewis was 90 shares for 90 acres of land, or one second foot of water for every 40 acres of land; that at the time said loan was made the said Lewis did not own any of the waters so stored, controlled, and distributed by defendant company, and did not own the right to use any of said waters, nor was he entitled to any shares of stock whatsoever of defendant company; that said certificate No. 43 had not been issued, and said Lewis was not the owner nor entitled to the possession of said certificate; that after said loan was made the said Lewis represented to the defendant William A. Joseph, at that time acting as secretary of the defendant company, that by said decree he was entitled to have the waters so decreed to him stored in said reservoir of defendant and have the same distributed to him upon lands claimed

to be owned by him by and through the canals, ditches, and waterways of the said defendant; that he was entitled to have a certificate of said defendant company issued to him for said water right, for the water right so decreed as aforesaid; that at the time said representations were made the said Lewis did not own, or does not now own, any right whatsoever, either by said decree or otherwise, to have said water so decreed to him stored, controlled, or distributed through said reservoir and canal system of defendant; that said William A. Joseph, as secretary of said defendant company, was misled by said representations made to him by said Lewis, and he, believing the same to be true and acting upon said representations, and not otherwise, issued and delivered to said Lewis said certificate No. 43 for $1405\frac{5}{8}$ shares of the capital stock of said defendant company; that at said time the said Joseph intended to deliver a certificate representing only the right to have stored and distributed to Lewis, in said reservoir and through said canals of the defendant, the water right so decreed to said Lewis; that said certificate was issued and delivered to Lewis without any consideration whatever, either from said Lewis or from the plaintiff, to the defendant company; that defendant corporation at said time had no water, nor at any time afterwards stored or controlled any which could be distributed to said Lewis under or by reason of said certificate, or otherwise; that in issuing said certificate to Lewis or to said plaintiff, the said William A. Joseph acted without right and without authority from the defendant company and without the knowledge or consent of its officers or stockholders; that plaintiff has never acquired any right or interest in the waters stored in said reservoir by virtue of said certificate, or at all.

Defendant further alleges that in making said representations, as aforesaid, the said A. B. Lewis was acting as the agent for and on behalf of the plaintiff; that at the time said representations were made and said certificate issued, the plaintiff knew, or should have known, that said repre-

sentations were false and that Lewis was not entitled to have issued to him said certificate of stock or any certificate whatever representing shares in the capital stock of defendant corporation; that said certificate No. 43 was issued and delivered to the said Lewis long after plaintiff made the aforesaid loan to Lewis and the Lewisiana Land Company, and plaintiff did not in any way rely upon said certificate of stock, or any rights represented thereby; that said certificate of stock was issued by mistake and without any consideration passing to the defendant company, and for that reason the defendant company has taken up said certificate and now refuses to deliver the same to plaintiff or to reissue a further certificate therefor.

Further answering, defendant denies that in acquiring said 1,200 acres of land plaintiff relied upon said shares of capital stock represented by said certificate or upon any representations made by said William A. Joseph, or by said defendant or any of its officers, and deny that plaintiff has been damaged in any sum whatever by reason of the retention of said certificate by defendant or by its refusal to reissue a further certificate to the plaintiff.

Defendant alleges it has been informed and believes that the water right decreed to A. B. Lewis, as aforesaid, and the 1,200 acres of land, are of greater value than the amount of money loaned by plaintiff to Lewis and the Lewisiana Land Company, and of greater value than the amount of money paid by plaintiff in acquiring the same, including therewith all expenses incurred by plaintiff in the collection of said loan; that said plaintiff has sustained no loss or damages whatever by reason of said transaction.

Defendant, further answering, denies every allegation not specifically admitted or denied.

In addition to the foregoing answer, defendant, by way of counterclaim, relies upon the matter set forth in the answer, and alleges that plaintiff wrongfully claims said certificate, and the water right represented thereby, and

that if the relief prayed for by plaintiff is granted the injury to defendant will be irreparable. Defendant prays that plaintiff take nothing by its complaint, and prays that the court shall adjudge and decree that plaintiff has no right, title, or interest in said certificate, is not entitled to the possession thereof, and that the same be canceled on the record of defendant company, and for such other relief as may be just.

Plaintiff in reply to the counterclaim denied each and every allegation thereof.

The complaint was filed January 7, 1918; the answer and counterclaim was filed October 25, 1918; and plaintiff's reply on December 16th of the same year. On February 2, 1925, plaintiff applied for leave to file an amended complaint. Objection was made on the grounds of laches and for other reasons, and the application was denied. Application was then made by plaintiff to file an amended reply to defendant's counterclaim, setting out substantially the same allegations as were alleged in the proposed amended complaint. This also was objected to for the same reason, and the application was denied. The ruling of the court is relied on as error, and both plaintiff and defendant have argued the question at considerable length. In view of the fact that the original complaint sufficiently alleges grounds of estoppel to authorize the admission of the evidence which was admitted pro forma by the court, we are of opinion no prejudicial error was committed in rejecting the proposed amendments.

The case was tried to the court without a jury on the original pleadings, the substance of which we have above set forth. Findings and decree were made in favor of the defendant. Plaintiff appeals. The court found the facts substantially as alleged in the answer and counterclaim of defendant. The principal errors relied on for a reversal of the judgment relate to numerous findings of the court.

The evidence as to the nature, purpose, and business of the defendant corporation is substantially as alleged in the answer and counterclaim of defendant and findings of the court. It also appears conclusively from the evidence that the certificate of stock No. 43, for the transfer and reissue of which plaintiff instituted the action, was an overissue and does not represent any water right in the defendant company. The primary question to be determined, therefore, is whether the defendant company, by the conduct of its officers and all the facts and circumstances disclosed by the evidence, is estopped from denying its liability to respond in damages for the alleged wrongs complained of in the complaint.

The undisputed evidence shows that on July 3, 1914, one A. B. Lewis was indebted to the plaintiff bank in the sum of $3,500, secured by a mortgage on 1,200 acres of land purchased from the state and situated in the vicinity of Miners-ville, Beaver county, Utah; that at said time Lewis was the owner of a primary water right in the Beaver river for 90 acres of land below the Minersville Reservoir, which had been decreed to him February 8, 1913, by the district court of Beaver county. It also appears from the evidence that on July 3, 1914, Lewis and the Lewisiana Land Company executed the following assignment of an alleged water right to T. W. Boyer, who was trustee for the plaintiff bank:

"The Lewisiana Land Company, a corporation, organized under the laws of the State of Utah, and A. B. Lewis, of Salt Lake City and Milford, State of Utah, parties of the first part, for and in consideration of the sum of one dollar to them in hand paid, and other valuable considerations, the receipt of which is hereby acknowledged, hereby sell, assign and set over to T. W. Boyer, of Salt Lake City, Utah, the party of the second part, all their and each of their rights, titles, and interests in and to that certain water right or rights in the Minersville Water Company of which said company one Will Joseph, is the acting secretary; said rights consist of the following: Ninety shares or about 550 acre-feet, and the said parties of the first part hereby agree to do all things necessary to perfect the title to said water rights in the said party of the second part.

"In witness whereof the said parties of the first part have hereunto set their hands this 3rd day of July 1914.

"Lewisiana Land Company,

"By A. B. Lewis, Its President.

"A. B. Lewis."

The instrument was duly acknowledged, and on July 6, 1914, J. Walcott Thompson, attorney for plaintiff, addressed the following letter to William A. Joseph, secretary of the defendant company:

"I beg to advise you that the Lewisiana Land Company and A. B. Lewis, personally, have on the third day of July, A. D. 1914, sold to T. W. Boyer at Salt Lake City, Utah, all their right, title and interest in and to their water rights in the Minersville Water Company consisting of ninety shares or about five hundred fifty acre-feet. Mr. Lewis advises me that no certificate or other evidence of ownership was ever issued covering his interest in the water.

"Will you please issue such certificate in the name of T. W. Boyer? As your authority for this I am enclosing, herewith, the original assignment and ask that after you have noted the same on your records you will be kind enough to return it to me promptly."

On July 13, 1914, Joseph, the secretary, replied to the above letter as follows:

"Mr. J. Walcott Thompson, Salt Lake City, Utah,

Dear Sir: In regard to your letter of July 6th will say that Mr. Lewis now has 140⅝ acres of water in the Minersville Reservoir and Irrigation Company as a result of a stock dividend recently declared.

"Mr. Lewis not having any stock certificate I have issued one for him, which I am sending you to have him transfer to T. W. Boyer.

"When Mr. Lewis properly transfers the certificate to Mr. Boyer, if he wishes a stock certificate, then you send me Mr. Lewis's and I can then make a proper transfer.

"I am doing this as you wanted the original assignment returned to you. Now I can retain the transferred stock of Mr. Lewis as our by-laws require that no transfers be issued only upon the surrender of the original certificate.

"I am enclosing the paper you wished returned."

It appears from the foregoing correspondence that Joseph received the assignment, and returned it to plaintiff's at-

torney, together with certificate No. 43 for stock in defendant company made in favor of Lewis with directions what to do. It further appears in the evidence that Lewis inclosed the certificate to the trustee of the plaintiff bank, Mr. Boyer, who on September 22, 1915, addressed a letter to Joseph, as secretary of defendant, informing him that the plaintiff held certificate No. 43 as security, and made inquiry as to what assessments, if any, had been levied against it, and requested Joseph to make a memorandum on his records that plaintiff held the certificate and to send further communications respecting it to the plaintiff. This letter was registered and received by Joseph, but no reply was made thereto. On December 8, 1915, plaintiff again wrote Joseph, calling attention to the previous letter and requested an answer. On September 14, 1916, Boyer wrote Joseph, inclosing the stock for transfer to Boyer as trustee. There was no reply to this letter. Again on September 29, 1916, Boyer wrote Joseph referring to previous unanswered letters. To this Joseph answered, in substance, that a mistake had been made in all the certificates, and that the defendant's board of directors had ordered that all of them be returned for cancellation and that no more be issued until the matter was settled. On October 3, 1916, Boyer again wrote Joseph requesting that the stock be transferred as requested in previous letters, and, receiving no answer thereto, wrote again on October 16, 1916, referring to previous failures to answer his letters, and made imperative demand that the certificate of stock No. 43, previously sent to the secretary, be immediately transferred to him as trustee for the plaintiff. The transfer was not made. In 1916, an action for foreclosure of the securities—the 1,200 acres of land and the water right represented by certificate No. 43—was instituted by plaintiff against Lewis and a decree of foreclosure entered in favor of plaintiff. The property was all sold in pursuance of the decree. The plaintiff became the purchaser for the amount of the judgment and costs in the sum of $15,004.15.

The trial court, among other things, found that Joseph had no authority to issue the certificate of stock, and that it was issued without any consideration passing to the defendant company. It is not seriously contended by appellant that defendant received any consideration for the stock or that Joseph had any express authority to issue it, but the contention of appellant is that in issuing the stock Joseph acted within the scope of his authority as secretary; that the plaintiff loaned money to Lewis in reliance upon the certificate and the assurance of Joseph as security for the loan, and for that reason defendant is estopped from asserting there was no consideration for the stock passing to the defendant. If appellant's premises are sustained by the evidence, its contention as a legal proposition is correct, unless it appears from the evidence that plaintiff failed and neglected to perform some duty which it owed to the defendant in order to entitle it to the certificate of stock. It must be admitted that in the instant case, unless a consideration was paid by Lewis to the defendant company for the certificate of stock in question, his title thereto as between him and the company would be defective. Even in the case of negotiable instruments, if the title to the instrument is shown to be defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course.

The articles of incorporation of the defendant company provide:

"The subscription to the stock of said corporation shall primarily consist of the assignment to said corporation of shares in the association known as the Minersville Irrigation Company. Each share in said company locally known and designated as one acre of water being received when properly assigned to this corporation, and shall be deemed payment in full for one share of stock in said corporation."

Such was the method, and the only method, of obtaining a certificate of stock direct from the defendant company. The defendant had no stock to dispose of in any other way

as far as the corporation itself was concerned. This being the condition and the only condition upon which stock could be obtained directly from the company, it becomes material to the question presented here to determine whether such condition was complied with in the instant case and what was plaintiff's knowledge and conduct in respect thereto. When Lewis assigned to plaintiff his interest in the "Minersville Water Company," plaintiff ought to have known from the very nature of the transaction that Lewis had not theretofore assigned his interest to the defendant company; otherwise, the plaintiff would not have accepted the assignment from Lewis. It would have demanded a certificate of stock instead. Having accepted the assignment from Lewis, the title to the water was then in plaintiff. In order therefore to obtain the certificate of stock from the defendant company for the water right represented in the assignment, it seems to us it was the plain duty of the plaintiff to assign its interest, under the assignment obtained from Lewis, to the defendant company, in which case, if the assignment in fact really represented an interest in a water right which defendant was bound to accept, plaintiff would have been in a position to demand a certificate of stock therefor. Instead, however, of plaintiff assigning its right to the defendant, it sent its assignment from Lewis to Joseph with a demand for a certificate of stock to plaintiff and a request that its assignment from Lewis be returned to the plaintiff. The assignment was returned to the plaintiff and filed for record in the office of the county recorder of Beaver county April 10, 1917. It was evidently filed at the request of the plaintiff, or by some one to whom the plaintiff had delivered it. If it be contended that plaintiff was not presumed to know the requirements of defendant's articles of incorporation as to the condition upon which stock could be obtained from the defendant company, it is sufficient to say that in any event plaintiff was presumed to know that stock is not issued in a corporation of this kind without consideration, and the facts and circumstances of the case at bar without

dispute tend to show that defendant received no consideration for the stock in controversy. In addition to these facts and circumstances enumerated, the testimony of defendant's witnesses conclusively shows that Lewis did not have, and never had, any right or interest in the defendant company or in the old Minersville Irrigation Company.

It appearing, then, that the title of Lewis to a water right in the defendant company was shown to be defective, did plaintiff discharge the burden of proof imposed upon it by proving that either it or some one under whom it claims was a holder in due course? We think not. Even if we assume that it is not satisfactorily shown that there was no consideration paid by Lewis for the stock by conveyance of the water right or otherwise, there is still the other question to be considered which in our opinion is of controlling importance. Whatever right Lewis had, if any, in the defendant company, it was not evidenced by a certificate of stock. He assigned all his right, title, and interest to the plaintiff. Plaintiff never made or offered to make any assignment of such right to the defendant company, notwithstanding which it seeks, by this action, to compel the issuance of said stock to it, or, if the stock cannot be issued, then a judgment for heavy damages. We know of no rule, either of law or equity, which can be relied on to sustain an action of this kind. It is immaterial here whether the water right claimed by Lewis was a right obtained under the Greenwood decree, or a right in some water controlled by the defendant company. As a matter of fact, however, the only right Lewis ever had, as far as this record is concerned, was a right under the Greenwood decree. It is therefore a charitable view to take that that was the right Lewis intended to convey to the plaintiff, otherwise he intended to perpetrate an unconscionable fraud. Be that as it may, the loose and irregular manner in which the business was transacted has resulted in disasterous consequences, especially to the defendant company, which seems to us to be less in fault than is the plaintiff, who is here seeking relief. If the plaintiff

had conveyed the interest it obtained from Lewis to the defendant company and then demanded its certificate of stock, the question would probably have been brought to an immediate head, and perhaps no serious harm would have resulted. Plaintiff did not take that course. It demanded a return of the assignment from Lewis. It made no assignment thereof to the defendant company, the result of which was Lewis had an opportunity to convey and did convey to other parties his water right obtained under the Greenwood decree, together with the land upon which the water right had been used. Of these facts the defendant had no knowledge or means of knowledge as far as appears from the record before us. Our conclusion is that the appeal is without merit and that the judgment should be affirmed.

Judgment affirmed, at appellant's costs.

CHERRY, HANSEN, GIDEON, JJ., and L. B. WIGHT, District Judge, concur.

STRAUP, J., being disqualified, did not participate herein.